# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00690-CV

**Alstom Power, Inc.; Alstom - Switzerland - Ltd.; Factory Mutual Insurance Company; and Wellington - Five - Limited, as the Majority Member of Syndicate 2020 at Llloyds, for the 1999 Underwriting Year of Accounting Whose Registered Office is 88 Leadenhall Street, London EC3A 3BA, Appellants**

**v.**

**Infrassure, Ltd., Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT NO. 05-2193, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Alstom (Switzerland) ("Alstom") is a Swiss company that manufactures and services gas turbines used in power plants. Employees of Alstom Power, Inc., an American subsidiary of Alstom, inadvertently damaged a turbine at a Hays County power plant while servicing it. Alstom paid part of the cost to repair the turbine, and the power plant's insurers paid the rest. The power plant's insurers and Alstom then sued Alstom's insurer, Infrassure, Ltd., for contribution. Infrassure, which is based in Switzerland, filed a special appearance, arguing that it was not subject to personal jurisdiction in Hays County. The district court granted Infrassure's special appearance, and the plaintiffs appealed. We will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

The undisputed record shows that Infrassure began insuring Alstom in 1999. Alstom's insurance policy was a "frame" policy, which means that it contained general terms but required Alstom to submit a separate "declaration form" describing each particular maintenance project it wanted insured. The parties agree that (1) Alstom obtained its frame policy from Infrassure through negotiations and communications occurring entirely in Switzerland; (2) the Alstom employee who negotiated the policy on Alstom's behalf was a Swiss citizen and resident; (3) coverage under the policy was denominated in Swiss francs; (4) all claims under the policy were to be handled through Swiss entities in Switzerland; and (5) all communications relating to the policy were to be made through Swiss entities in Switzerland. In addition, the policy contained a "Law and Jurisdiction Clause" that stated: "For all disputes arising out of this Insurance contract, Swiss Law shall apply. Place of Jurisdiction is Zürich."

In early 2003, Alstom submitted a declaration form for maintenance work that its American subsidiary, Alstom Power, planned to perform at a Hays County power plant owned by the Hays Energy Limited Partnership (HELP). Infrassure agreed to cover the work, just as it had covered other maintenance work performed by Alstom Power in Texas in the previous two years.[2] Again, all communications occurred in Switzerland.

---

[1] We recently considered related events in *Munters Euroform GmbH v. American Nat'l Power, Inc.*, No. 03-05-00493-CV, 2009 Tex. App. LEXIS 9860 (Tex. App.—Austin Dec. 31, 2009, no pet. h.).

[2] Between October 2001 and March of 2003, Infrassure collected roughly $700,000 in premiums from Alstom for insuring work that Alstom performed on nine gas turbines in Texas.

During the maintenance work, the gas turbine incurred roughly $7 million in damage. HELP held an insurance policy through Factory Mutual Insurance Company ("FM Global") and Wellington Underwriters, Ltd. ("Wellington") that named Alstom and Alstom Power as additional insureds.[3] Accordingly, when Alstom Power's employees damaged the turbine, HELP notified its insurers. Those insurers ultimately paid roughly $5 million in repair costs. Alstom paid the remaining $2 million, which was the deductible under HELP's insurance policy.

Alstom notified its own insurer, Infrassure, of the damage to the turbine immediately after the damage occurred. Roughly one week later, Infrassure's Project Insurance Manager and CEO flew from Switzerland to Texas to inspect the damage. Infrassure did not, however, end up offering to contribute to the repair costs. In fact, Infrassure allegedly tried to conceal the existence of its insurance policy from HELP and HELP's insurers.[4]

In exchange for paying the turbine repair costs, HELP's insurers received a pro-rata assignment of Alstom's interest in Alstom's Infrassure policy. Consequently, HELP's insurers, FM Global and Wellington, joined with Alstom in suing Infrassure in Hays County district court. Infrassure temporarily removed the case to federal court in Austin, but the plaintiffs were able to obtain a remand to state court. Infrassure then filed its special appearance, which the trial court eventually granted. Subsequently, at the plaintiffs' request, the court issued findings of fact and conclusions of law. In doing so, the court adopted verbatim the proposed findings of fact and

[3] FM Global is based in Rhode Island and has been licensed to issue insurance in Texas since 1968. Wellington is based in England.

[4] Appellants brief this issue extensively but cite no authority indicating that it is relevant to our jurisdictional analysis. Because the trial court's jurisdictional analysis is the only object of our review, we will not address the concealment issue further.

conclusions of law that Infrassure had submitted. The plaintiffs submitted a request for amended and additional findings of fact and conclusions of law. After the court denied their request, plaintiffs filed this appeal.

**STANDARD OF REVIEW**

We review de novo a trial court's determination of whether Texas can assert personal jurisdiction over a nonresident defendant. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). We review the findings of fact underlying such a determination, however, for legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

Under our legal-sufficiency standard of review, we view the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id*. at 827. There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists to support a finding if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id*.

4

Under our factual-sufficiency standard of review, we weigh all the evidence in the record and may overturn a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Once we determine that the trial court's findings are supported by sufficient evidence, we decide as a matter of law whether those findings negate all bases for personal jurisdiction. *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 871 (Tex. App.—Austin 2008, no pet.). In doing so, we review all relevant evidence that was before the trial court. *See id*.

We review de novo a trial court's conclusions of law. *Marchand*, 83 S.W.3d at 794.

## DISCUSSION

Appellants enumerate three issues: (1) whether Infrassure's in-state activities are sufficient to subject it to the personal jurisdiction of Texas courts; (2) whether the Texas Insurance Code subjects Infrassure to the personal jurisdiction of Texas courts; and (3) whether the forum-selection clause in Infrassure's policy is mandatory or permissive. These issues are interrelated, so we address them jointly.

Appellants argue that Infrassure is subject to personal jurisdiction in Texas courts because Infrassure (1) insured and collected premiums from maintenance work in Texas and (2) sent high-ranking company executives to Texas to investigate Alstom's claim.

Texas's long-arm-jurisdiction statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (West 2008). The statute permits Texas courts to exercise jurisdiction over a nonresident defendant that "does

5

business" in Texas. *Id*. § 17.042. This broad language extends Texas courts' personal jurisdiction "'as far as the federal constitutional requirements of due process will permit.'" *Marchand*, 83 S.W.3d at 795 (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Thus, Texas courts look to both federal and Texan jurisprudence in resolving questions of personal jurisdiction. *Id*.

The Texas Supreme Court has recently restated the standard for personal jurisdiction:

> Personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Moki Mac*, 221 S.W.3d at 575 (citations and quotations omitted). The Court continued:

> [T]here are three parts to a "purposeful availment" inquiry. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Thus, [s]ellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities. Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id*. (citations and quotations omitted). This analysis entails that "a defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there." *Id*.

A nonresident defendant's contacts with a forum state

6

may give rise to two types of personal jurisdiction. If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts. In contrast, . . . [s]pecific jurisdiction is established if the defendant's alleged liability aris[es] out of or [is] related to an activity conducted within the forum.

*Id*. at 575-76 (citations and quotations omitted). General jurisdiction "requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction." *Marchand*, 83 S.W.3d at 797 (citation and quotation omitted).

Even if we were to assume that Infrassure's in-state contacts were sufficient to satisfy the minimum-contacts test for general or specific jurisdiction, that would not end our analysis. This is because even if a nonresident defendant has made sufficient contacts with the forum state to support a finding of general or specific jurisdiction, constitutional due process concerns prohibit subjecting the nonresident defendant to such jurisdiction if doing so would violate traditional notions of fair play and substantial justice. Thus, once a court has determined that a nonresident defendant's contacts with the forum are sufficient to subject the defendant to the forum's jurisdiction, the court must also consider "whether the assertion of jurisdiction comports with fair play and substantial justice." *Ghosh*, 251 S.W.3d at 868 (citing *Marchand*, 83 S.W.3d at 795). This analysis involves weighing five factors:

(1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.

7

*Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991) (quotations omitted). Where, as here, a dispute is international, only the first three factors are relevant. *See id*. at 232 n.17 ("Since this is an international dispute and not a dispute between coequal sovereigns in our federal system, we need not consider the interstate judicial system's interest in obtaining the most efficient resolution of controversies or the shared interest of the several states in furthering fundamental substantive social policies.").

### General Jurisdiction

Appellants initially argue that Texas courts should have general jurisdiction over Infrassure because of the extent of Infrassure's in-state activities. We disagree. The record reveals that Infrassure is connected to Texas only through Alstom's insurance policy. It is true that under the policy Infrassure insured nine maintenance projects in Texas between 2001 and 2003. "It is the quality and nature of the defendant's [forum-state] contacts," however, "rather than their number, that is important to the minimum-contacts analysis." *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Here, the policy at issue was negotiated in Switzerland between Swiss parties, and it contemplated that all interaction between Alstom and Infrassure would occur in Switzerland. Furthermore, the policy did not initially mention Texas; rather, Alstom brought Texas into the picture by asking Infrassure to cover specific projects there. *See Moki Mac*, 221 S.W.3d at 575 ("[O]nly the defendant's contacts with the forum are relevant" to the jurisdictional analysis, "not the unilateral activity of another party or a third person.").

8

Finally, Infrassure had no corporate presence in Texas,[5] solicited no business in Texas, and did no business with Texas residents.[6] In other words, Infrassure's contacts with Texas were not "continuous and systematic." *Id*. As a result, Texas courts cannot properly exercise general jurisdiction over Infrassure.

***Specific Jurisdiction***

It is a closer question whether Texas courts can properly exercise specific jurisdiction over Infrassure. Some federal courts seem to employ a categorical rule that insurers are subject to specific jurisdiction wherever their policies operate. *See, e.g.*, *Commonwealth v. SS Zoe Colocotroni*, 628 F.2d 652, 670 (1st. Cir. 1980). Other federal courts reject that rule. *See, e.g.*, *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1094-95 (10th Cir. 1998). The Texas Supreme Court has implicitly rejected it too. In *Guardian Royal*, the Court held that Texas courts could not properly exercise personal jurisdiction over an English insurer of an English company whose policy covered losses "anywhere in the world [the insured] and its subsidiary companies did business." 815 S.W.2d at 225. Although the court determined that the insurer's contacts with Texas

---

[5] Indeed, it appears that the only time Infrassure employees ever set foot in Texas was when its CEO and Project Insurance Manager flew to Hays County to investigate Alstom's claim.

[6] As noted above, Infrassure collected roughly $700,000 in premiums from Alstom for insuring Alstom's work in Texas. Appellants argue that these premiums were effectively paid by Texas residents because Alstom passed on their cost to its clients. This fact is irrelevant because "only the defendant's contacts with the forum" affect the jurisdictional analysis, "not the unilateral activity of another party or a third person." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). *See also Medcost, L.L.C. v. Loiseau*, 166 S.W.3d 421, 428 n.7 (Tex. App.—Austin 2005, no pet.) ("MedCost's 'profit-based' relationship through an attenuated chain of contracts with others cannot confer personal jurisdiction, nor can the fact that MedCost ultimately received moneys from Texas entities.").

were theoretically sufficient to justify personal jurisdiction, the court held that asserting jurisdiction over the insurer would be "unreasonable." *Id*. at 232. In support of this position, the Court noted the following facts:

- The insurer and the insured were both English companies;
- The insured's subrogee, another insurer, was not a Texas company;
- "All acts concerning the negotiation, implementation and performance of the policy and endorsements (including the payment of premiums) occurred in England";
- Texas's interest in adjudicating the dispute was minimal because the parties involved were "neither Texas consumers nor [Texas] insureds"; and
- The insured's interest in litigating in Texas was minimal, because it could obtain convenient and effective relief by litigating in England.

*Id*. at 232-33.

Given its factual similarities to this case, *Guardian Royal* is highly instructive for our own factorial analysis. As stated above, the first factor Texas courts consider in determining whether they can reasonably exercise specific personal jurisdiction over a nonresident defendant is the burden on the defendant. *Id*. at 232. Courts have repeatedly noted that litigating in America can be especially difficult for foreign defendants. *See, e.g.*, *id*. at 229 ("'The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.'") (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)). Here, Infrassure is a Swiss company with roughly 35 employees and no ongoing presence in the United States. These

10

facts suggest that litigating in Texas would indeed be burdensome on Infrassure. Appellants argue that Infrassure has demonstrated a willingness to subject itself to Texas jurisdiction because it voluntarily insured maintenance work in Texas and sent executives to Texas to investigate Alstom's claim. There is a significant difference, however, between sending two employees on a single visit to Texas and engaging in a potentially lengthy lawsuit in Texas. Furthermore, as will be discussed below, it appears that even though Infrassure knowingly insured maintenance work in Texas, it expected that any dispute over that insurance would be resolved exclusively in Switzerland. On the whole, then, the first factor of the "fair play and substantial justice" analysis, the burden on the defendant, weighs against exercising personal jurisdiction over Infrassure.

The second factor Texas courts consider in determining whether they can reasonably exercise specific personal jurisdiction over a nonresident defendant is Texas's interest in adjudicating the dispute. *Id*. at 232. Texas has no interest in adjudicating this dispute because none of the parties is a Texas resident. *See id*. at 233 ("Texas does not have a compelling interest in providing a forum for resolution of disputes between [foreign] insurers."). Appellants argue that Texas Insurance Code chapter 101 demonstrates that Texas professes an interest in insurance disputes like this one. Chapter 101 regulates the unauthorized practice of insurance in Texas, and it purports to "subject certain insurers and persons to the jurisdiction of . . . the courts of this state." Tex. Ins. Code Ann. § 101.001(c)(2) (West 2009). By its own terms, however, chapter 101 aims to protect Texas residents and to prevent unauthorized insurers from using Texas as a "safe harbor" to issue unauthorized insurance. *See id*. § 101.001(b), (d). Neither issue is implicated here, as no party

11

is a Texas resident and Infrassure did not issue insurance out of Texas.[7]  Thus, contrary to Appellants' argument, the Texas Legislature has not expressed an interest in disputes like this one.[8] We therefore conclude that the second factor of the "fair play and substantial justice" analysis weighs against exercising personal jurisdiction over Infrassure.

The third factor Texas courts consider in determining whether they can reasonably exercise specific personal jurisdiction over a nonresident defendant is the plaintiff's interest in obtaining convenient and effective relief.  *Guardian Royal*, 815 S.W.2d at 232.  Appellants argue that Texas is the most convenient and effective forum because (1) witnesses are located here and (2) appellant FM Global has an office here.  While it is true that some witnesses, including some who personally inspected the damage to HELP's turbine, are presumably located in Texas, it is also true that many key witnesses, including Alstom and Infrassure employees, are located in Switzerland. *Cf. TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1295-96 (10th Cir.

---

[7]  Moreover, although Infrassure issued an insurance policy to a non-resident company that covered work performed in Texas, this conduct does not constitute "the business of insurance" as defined by the Texas Legislature in the Texas Insurance Code.  *See* Tex. Ins. Code. Ann. § 101.051 (West 2009).  Because Infrassure has not engaged in the business of insurance as defined in section 101.051 of the insurance code, Infrassure would not be subject to regulation under chapter 101 for the unauthorized practice of insurance.  *See id*. § 101.001.

[8]  Appellants argue that Insurance Code section 101.001(b)(3) shows the Texas legislature has professed an interest in protecting all insurers licensed to do business in Texas.  *See* Tex Ins. Code § 101.001(b)(3) ("It is the policy of this state to protect residents against acts by a person or insurer who is not authorized to do insurance business in this state by . . . *protecting authorized . . . insurers* . . . from unfair competition by unauthorized persons and insurers.") (emphasis added).  The statute plainly states, however, that Texas has an interest in protecting "authorized insurers" only as a means of protecting Texas residents.  No Texas resident has an interest in this lawsuit.  Thus, this lawsuit does not further the interest expressed in section 101.001(b)(3).  And even if it did, section 101.001(b)(3) could not create jurisdiction over Infrassure if jurisdiction were otherwise unconstitutional.  *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (exercise of personal jurisdiction is limited by constitutional due process considerations).

12

2007) (presence of some witnesses in Kansas does not make Kansas more convenient and effective forum when other witnesses are in Netherlands). In addition, even though FM Global has an office in Texas, it operates globally, and it has already joined the other appellants in filing an action against Infrassure in Switzerland. This fact undermines the claim that litigating in Switzerland is truly inconvenient or ineffective for any of the Appellants.[9] Thus, the third factor of the "fair play and substantial justice" analysis weighs against Texas courts exercising specific personal jurisdiction over Infrassure.

As already discussed, the international nature of this dispute means that we do not need to consider the fourth and fifth factors of the "fair play and substantial justice" analysis. *See Guardian Royal*, 815 S.W.2d at 232 n.17 ("Since this is an international dispute and not a dispute between coequal sovereigns in our federal system, we need not consider the interstate judicial system's interest in obtaining the most efficient resolution of controversies or the shared interest of the several states in furthering fundamental substantive social policies."). But because the nonresident defendant is an insurer, we consider two additional factors: "(a) the insurer's awareness that it was responsible to cover losses arising from a substantial subject of insurance regularly present in the forum state; and (b) the nature of the particular insurance contract and its coverage." *Id*. at 227. Regarding the first of these factors, Infrassure undoubtedly foresaw that claims might

---

[9] At a minimum, Switzerland is indisputably a convenient and effective forum for the Swiss company Alstom. It is axiomatic that subrogees stand in the shoes of their subrogors both procedurally and substantively. *See Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 234 (Tex. 1991) (Mauzy, J., dissenting). Thus, to the extent that FM Global is Alstom's subrogee, it cannot complain that Switzerland is an inconvenient and ineffective forum.

13

arise from activities in Texas. However, foreseeability alone is not enough. *See id.* (foreseeability not necessarily determinative when considering whether nonresident defendant purposefully established minimum contacts with forum state). Given that both parties to Alstom's insurance policy were Swiss, and given that the policy's "Law and Jurisdiction Clause" named only Switzerland as a location to air disputes,[10] Infrassure had no reason to foresee being sued in Texas even if it had reason to foresee claims arising in Texas. Moreover, Infrassure insured only discrete maintenance projects in Texas; it did not insure property that remained in Texas on an ongoing basis.

Regarding the second insurance-specific factor, namely "the nature of the particular insurance contract and its coverage," Alstom's insurance contract did specifically cover maintenance projects in Texas. As noted above, however, the contract dictated that all claims were to be handled and all communications made through Swiss entities in Switzerland. As also noted above, the "Law and Jurisdiction Clause" of the contract evinces an intent to address all disputes in Switzerland.

Appellants argue that, on the contrary, the "Law and Jurisdiction Clause" suggests that Texas may properly exercise jurisdiction over disputes between Alstom and Infrassure. Again, that clause reads: "For all disputes arising out of this Insurance contract, Swiss Law shall apply. Place of Jurisdiction is Zürich." Appellants concede that the first sentence of this clause dictates that Swiss law will govern this dispute even if it plays out in Texas courts.[11] They nevertheless contend

---

[10] We discuss this issue more extensively below.

[11] This is an additional factor weighing against Texas exercising jurisdiction over this dispute. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985) (choice-of-law clause relevant to jurisdictional analysis because it suggests whether there was "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there").

14

that jurisdiction is proper in Texas because the second sentence of the clause is "permissive" rather than "mandatory"—i.e., it states that Zurich is a proper forum but not the *only* proper forum.

Texas courts generally honor forum-selection clauses. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005) ("[E]nforcement of a forum-selection clause is mandatory absent a showing that enforcement would be unreasonable and unjust, or that the clause was invalid due to fraud or overreaching.") (quotation omitted). And Appellants are correct that only a clause *mandating* suit in Zurich could render Texas an improper forum per se. *See id*. at 792 ("Generally, a forum-selection clause operates as consent to jurisdiction in one forum, not proof that the Constitution would allow no other."). Logically, however, "insertion of a clause designating a foreign forum suggests that no local availment was intended." *Id*. at 793. This is an application of the venerable principle *expressio unius est exclusio alterius*—"the naming of one thing excludes another." *See CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655-56 (Tex. 1987) (applying principle to interpretation of contract). The fact that Alstom's insurance contract names only Zurich as "Place of Jurisdiction" strongly suggests that the parties intended jurisdiction to lie nowhere else. *Cf. Frietsch v. Refco, Inc.*, 56 F.3d 825, 829 (7th Cir. 1995) (finding it "implausible" that forum-selection clause was intended to be permissive rather than mandatory because clause says "place of jurisdiction is Germany," not "a place of jurisdiction is Germany."). When coupled with the facts that (1) both parties to the contract are Swiss and (2) the contract unequivocally subjects all disputes to Swiss law, the most reasonable reading of the clause is that the parties intended Zurich to be the only place of jurisdiction.

Nevertheless, because Alstom's insurance policy does not actually say "exclusive place of jurisdiction is Zurich"or something to that effect, we cannot conclude that the clause alone

15

precludes Texas courts from exercising personal jurisdiction over Infrassure. *See Michiana*, 168 S.W.3d at 792. This fact does not help Appellants, however, because the clause was not the sole basis on which the trial court granted Infrassure's special appearance. Rather, the trial court treated the clause as but one element of its "fair play and substantial justice" analysis. Doing so was proper. *See id*. at 793 ("[I]nsertion of a clause designating a foreign forum suggests that no local availment was intended."). The clause exemplifies how "a defendant may purposefully [attempt to] avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there." *Moki Mac*, 221 S.W.3d at 575.

As a result of all these considerations, we hold that even if Infrassure had sufficient minimum contacts with Texas to justify specific jurisdiction, it would be unfair and unreasonable for Texas courts to exercise that jurisdiction.

## CONCLUSION

On these facts, Texas courts cannot fairly and reasonably exercise personal jurisdiction over the Swiss company Infrassure. We therefore affirm the trial court's grant of Infrassure's special appearance.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: February 12, 2010

16